IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BLUE HUAWEI CELLULAR TELEPHONE WITH IMEI 862850042464607 | Case No. 2:23-mj-00159 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Aaron M. Lee, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant to search a blue Huawei cellular telephone with IMEI 862850042464607 hereinafter, "TARGET TELEPHONE" used by a woman employed as a masseuse at a massage parlor located at 5411 MacCorkle Avenue Southeast, Charleston, West Virginia 25304. To protect her identity as a possible victim of sex trafficking, the woman will be referenced herein as "MASSEUSE-1" or "M-1." As set forth herein, probable cause exists that M-1 used the TARGET TELEPHONE in furtherance of one or more violations of 18 U.S.C. § 2421 – transportation of any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense (hereinafter, "SUBJECT OFFENSE"). Further, probable cause

exists that evidence of that offense is currently located within the TARGET TELEPHONE more particularly described in ATTACHMENT A.

2.    I am a Special Agent employed by the United States Department of Justice, the Federal Bureau of Investigation (hereinafter, "FBI"), and as such I am a "federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) and am authorized to apply for federal search warrants. I have been employed as a Special Agent of the FBI since January of 2019. I am currently assigned to the FBI Charleston Resident Agency, Charleston, West Virginia. During my employment with FBI, I have been involved in several investigations including matters of national security, drugs, and fraud. As part of my duties with the FBI, I investigate violations of federal law, including offenses enumerated in Title 18 U.S.C. § 2421. I have been the affiant on search warrants and have personally participated in executing search warrants and making arrests. Prior to working for the FBI, I was employed as a Correctional Officer in the West Virginia Division of Corrections and the Federal Bureau of Prisons for more than three years. During my time as a Correctional Officer, I had experience in searching for contraband to include drugs. I have also received training related to investigating human trafficking hosted by the United States Department of Homeland Security.

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained

2

from other agents, law enforcement officers, and witnesses. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all my knowledge about this investigation.

## **Probable Cause**

4.   In November of 2022, the FBI began investigating a massage business located at 5411 MacCorkle Avenue Southeast, Charleston, West Virginia 25304. According to the West Virginia Secretary of State's website, the business is registered to Fumin CHEN under the business name "YANGYANG BODYWORK INC.," (hereinafter, "YBI"). On December 7, 2022, at approximately 5:10 PM, a confidential human source (CHS), who is a local business owner, said s/he had observed a black sprinter van with New York license plate KVV6420 drop off an Asian female and pick up another Asian female at the YBI premises. The CHS is not anonymous and has provided truthful information in the past regarding this investigation that has been corroborated by independent investigation. According to the West Virginia State Police's license plate reader (LPR) system, on December 7, 2022, at approximately 3:55 PM, the van described above with the same license plate observed by the CHS, was observed by the LPR system on the border of Kentucky and West Virginia traveling into West Virginia. On August 2, 2023, at approximately 4:16 PM, the same

3

van was observed by the LPR system on the border of Kentucky and West Virginia traveling into West Virginia.

5. On February 22, 2023, approximately 5:00 PM, the CHS observed a white Toyota van at the YBI premises. The CHS observed an Asian female exit the rear passenger side of the van with a black bag in her hand and enter the YBI premises.

6. On August 2, 2023, at approximately 3:19 AM, video surveillance captured a white passenger van in front of YBI. Both the driver side and passenger side doors of the van were open with a male standing near the passenger side door. Law enforcement observed on the video footage a female exit YBI carrying what appeared to be a suitcase. The male standing near the passenger side door removed what appeared to be a suitcase from the van and the male and female traded suitcases. The female then took the suitcase inside YBI.

7. On September 6, 2023, law enforcement searched for advertising for massage businesses located at the YBI premises on Rubmaps.ch and Skipthegames.com. Both websites are known to law enforcement as websites commonly used for prostitution. On Rubmaps.ch, an advertisement was listed for the YBI premises. The listing stated it was $60 for a 60-minute massage. On Skipthegames.com, there was a listing for the YBI premises dated September 5, 2023. With the listing, there were photographs of

Asian females performing sexual acts. The listing stated there were four new pretty girls and a new manager at the YBI premises. Other statements about services available at the YBI premises in the listing were "Sexy and skillful asian girl who knows how to please men.", and "love French Kissing n Touching.", and "Don't be alone today. Call me now." On the same listing under the words "our service" the listing stated "360 ROTATIO G * F * E," "DUO SHOWER TOGETHER," "TOUCHING," "HOT B2B NURU MASSAGE," "KITTY JUICE SITTING UR FACE," "LICK MY JUICE KITTY," "LICK UR BALL," "Sweet and Discreet," "Shower Together," "69.Bbbj," "GFE," "Kiss & Touch Lick," "Love making Nipple Sucking," and "Nuru Massage B2B." At the base of the listing is the statement "We are an agency and serve many cities. Photos are a likened of the girls presented but may not be 100 percent accurate." Based on my training and experience and conversations with other law enforcement officers, the term "GFE" refers to the girlfriend experience, the term "kitty" refers to the vagina, and "69" refers to a position used during sexual intercourse.

8. On September 21, 2023, the FBI executed a federal search warrant at YBI. Agents immediately encountered M-1 and two other undocumented Asian females who acknowledged being employed as masseurs. Agents directed the women to exit the building during the execution of the search warrant. Due to the heat and direct

5

sunlight, the women were permitted to sit inside separate FBI vehicles with air-conditioning. The vehicle doors remained open, and the women were not restrained. An FBI interpreter was on site to facilitate communication with the women.

9. YBI occupied half of a one-story rectangular commercial building. In addition to having a waiting area and massage rooms, the building contained living quarters to include areas for sleeping, a shower and laundry facilities, and a small kitchen. Luggage and other personal items were found in various locations throughout the building suggesting that more than one person was living there. The building was equipped with security cameras on the exterior and in the waiting room and hallway inside the building. Agents executing the search warrant seized numerous items of evidentiary value including ledgers, receipts, several thousands of dollars in cash and credit card receipts banded together appearing to represent daily business records, travel documents, a large number of unused condoms, several used condoms, other apparent business records,[1] a digital video recorder hard drive that was connected to the surveillance camera system, and a cellular telephone assigned the number 304-850-0888 listed in the

---

[1] Many of the seized records are described in this paragraph as being business records are in Chinese. Their location suggests that they are receipts and other business records. However, confirmation of their nature and contents will not be possible until they are translated into English.

6

items to be seized under the search warrant. Agents photographed but did not seize other items related to sexual activity.

10. An agent took the TARGET TELEHONE from M-1 to secure it pending application for a search warrant. M-1 agreed to be interviewed and said that she used the TARGET TELEPHONE to communicate with a person using telephone number 917-991-3031 who arranged for her to travel to West Virginia to work at the massage parlor. M-1 showed the undersigned a portion of the TARGET TELEPHONE's call log confirming that she had called the number. M-1 did not show the complete call log. The undersigned observed that the TARGET TELEPHONE had text communication applications enabled, but the contents were in Chinese. M-1 stated that she paid a "snakehead," and the snakehead arranged for her travel to the United States. M-1 stated she owed the snakehead $50,000 for her travel to the United States. M-1 also told law enforcement that she borrowed money from her family to pay the snakehead what she owed. Based on my training and experience and conversations with other law enforcement officers, the term "snakehead" refers to a Chinese criminal organization. When asked about condoms found during the search, M-1 said that the condoms are there if a customer needs them for sexual performance. She further stated that she had engaged in sexual activity while working at YBI.

11. On September 26, 2023, your affiant had obtained a federal

search warrant for a cellular telephone seized during the execution of the YBI search warrant described with a particular International Mobile Equipment Identity (IMEI) number and having no Subscriber Identity Module (SIM) card. Prior to executing the warrant, your affiant realized that the telephone was not the device seized from M-1. Rather, the telephone was one that was observed at YBI but not seized. In drafting the prior search warrant and affidavit, your affiant mistakenly described that phone rather than the TARGET TELEPHONE. The initial warrant will be returned unexecuted. This application and affidavit has been revised to reflect the correct identification of the TARGET TELEPHONE.

12.   Based upon the facts of this investigation and the proceeding information, probable cause exists the evidence of the SUBJECT OFFENSE as more fully described in ATTACHMENT B currently exists within the memory of the TARGET TELEPHONE.

13. Cellular Telephones: It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the full range of the device's functionality and the scope of the data stored on the device. Cellular telephones today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books and can be miniature computers capable of using electronic mail services,

internet or web services, and rudimentary word processing. Cellular service providers allow their subscribers to access their device over the internet and remotely destroy all that data contained on the device. For that reason, securing the data contained within the device may require the device to only be powered on in a secure environment or started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. Conversions can be hidden in various applications. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer. Consequently, this warrant seeks authorization to search or analyze the same off-site by one or more trained examiners.

14.   This warrant application seeks authorization to search the TARGET TELEPHONE more fully described in ATTACHMENT A and to conduct a forensic examination of that device.

Further your Affiant sayeth naught.

Respectfully submitted,

Aaron M. Lee, Special Agent
Federal Bureau of Investigation

Sworn to me by telephone or other reliable or other reliable electronic means on October 3rd, 2023.

DWANE L. TINSLEY
United States Magistrate Judge

10